# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

VINCENT McCRUDDEN,

     *Plaintiff,*

v.

Case No.: 3:26-CV-816-WWB-LLL

TOPSTEPFUNDED LLC, an Illinois limited liability company;
TOPSTEP LLC, a Delaware limited liability company;
TOPSTEPTRADER, LLC, an Illinois limited liability company;
ANDREW JAMES MARATEA, individually;
MICHAEL JOSEPH PATAK, individually;
SARAH SUZAN ZELENY, individually;
SUMMER KERISHA CAPPS, individually;
TAMMY SUE BOTSFORD, individually,

     *Defendants.*

---

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S COMPLAINT

## I. PRELIMINARY STATEMENT

Plaintiff Vincent McCrudden ("Plaintiff" or "Mr. McCrudden"), a twenty-five-year veteran of the financial services industry who held Securities Series 3, 4, 7, 24, 55, and 63 licenses, brings this action against TopstepFunded LLC ("TopStepFunded"), an Illinois limited liability company; its parent entity Topstep LLC ("Topstep"), a Delaware limited liability company; its affiliate TopstepTrader, LLC ("TST"), an Illinois limited liability company (collectively, the "Entity Defendants"); and the officers and principals who directed, authorized, and implemented the scheme described herein: Andrew James Maratea ("Maratea"), Chief Legal Officer (NFA ID #0567741); Michael Joseph Patak ("Patak"), Chief Executive Officer (NFA ID #0332803); Sarah Suzan Zeleny ("Zeleny"), Chief Operating Officer (NFA ID #0567744); Summer Kerisha Capps ("Capps"), Chief Financial Officer (NFA ID #0572364); and Tammy Sue Botsford ("Botsford"), Chief Compliance Officer (NFA ID #0570664) (collectively, the "Individual Defendants"; together with the Entity Defendants, the "Defendants").

*McCrudden v. TopstepFunded LLC, Topstep LLC, TopstepTrader, LLC, et al.*

This action arises from Defendants' systematic and deceptive scheme to extract subscription fees, commissions, exchange fees, and trading data from futures traders while employing an ever-shifting set of rules, restrictions, and account structures specifically designed to prevent those traders from achieving sustainable profitability or accessing funds they have legitimately earned. Defendants operate what is, in substance, an unregistered commodity pool—soliciting funds from thousands of traders, combining those funds in a master trading account, and trading futures on regulated exchanges—without registration as a Commodity Pool Operator ("CPO") with the Commodity Futures Trading Commission ("CFTC") or the National Futures Association ("NFA"), thereby evading the disclosure, reporting, and fiduciary obligations that such registration requires.

Over the course of more than three years, Plaintiff has paid tens of thousands of dollars in subscription fees to TopStep. Despite consistently demonstrating profitable trading in TopStep's evaluation ("Combine") and simulated funded ("XFA") accounts, Defendants have repeatedly changed the rules of engagement—imposing increasingly restrictive trading parameters, prematurely forcing Plaintiff into "live" accounts with oppressive conditions; and locking earned capital in an inaccessible "reserve" requiring mathematically near-impossible returns to unlock.

This Memorandum demonstrates that the Defendants' conduct gives rise to claims for: (1) operation of an unregistered commodity pool in violation of the Commodity Exchange Act ("CEA"); (2) fraud and manipulation under the CEA; (3) breach of contract and the implied covenant of good faith and fair dealing; (4) fraudulent inducement; (5) violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); (6) conversion; (7) unjust enrichment; (8) breach of fiduciary duty; and (9) unconscionability.

## II.  JURISDICTION AND VENUE

### A.  Subject Matter Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of citizenship). Plaintiff is a citizen of the State of Florida, residing at 31 Flyer Circle, Saint Johns, Florida 32259. Defendant TopstepFunded LLC is an Illinois limited liability company with its principal place of business at 141 W. Jackson Blvd., Suite 4240, Chicago, Illinois 60604. Defendant Topstep LLC is a Delaware limited liability company with its principal place of business at the same address. Defendant TopstepTrader, LLC is an Illinois limited liability company with its principal place of business at the same address. Upon information and belief, each of the Individual Defendants is a citizen of a state other than Florida. Complete diversity of citizenship exists between Plaintiff and all Defendants. The amount in controversy exceeds $75,000, exclusive of interest and costs, based on Plaintiff's claims for compensatory damages including tens of thousands of dollars in subscription fees, $28,000 in withheld reserve funds, lost trading profits, consequential damages, and punitive damages.

This Court also has federal question jurisdiction under 28 U.S.C. § 1331 based on Plaintiff's claims arising under the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq.*, including claims for operation of an unregistered commodity pool (7 U.S.C. § 6m), fraud (7 U.S.C. § 9(1); 17 C.F.R. § 180.1), and violations of NFA Compliance Rules. The Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367, as those claims arise from the same nucleus of operative facts.

## B. Personal Jurisdiction and Venue

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, including Plaintiff's execution of trading agreements, payment of subscription fees, conduct of trading activities, and receipt of Defendants' deceptive marketing. This Court has personal jurisdiction over all Defendants because they have purposefully directed their commercial activities toward Florida, including soliciting and entering into contracts with Florida residents, collecting subscription fees and commissions from Florida residents, and maintaining an ongoing commercial relationship with Plaintiff in this District.

## C. The Forum-Selection Clause Is Unenforceable

Section 18 of the Live Funded Account Agreement (the "Agreement") designates Delaware courts as the exclusive forum. Forum-selection clauses are presumptively valid but are not enforced where they are unreasonable, unjust, or the product of fraud or overreaching. *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972). Enforcement of the Delaware forum clause would be unreasonable here because: (1) TopStep targets Florida residents through nationwide marketing and maintains ongoing commercial relationships with Florida traders; (2) requiring a Florida resident to litigate in Delaware a dispute arising from a contract of adhesion, where the forum was selected solely for TopStep's benefit, is precisely the overreaching recognized as a basis for non-enforcement; (3) the Agreement was executed under economic duress; and (4) Plaintiff's federal statutory claims under the CEA provide an independent basis for jurisdiction in this District.

## D. The Arbitration Clause Is Unconscionable and Unenforceable

Section 19 of the Agreement mandates JAMS arbitration in Wilmington, Delaware. While the Federal Arbitration Act establishes a general policy favoring arbitration, courts decline to enforce arbitration clauses that are unconscionable. *Pendergast v. Sprint Nextel Corp.,* 592 F.3d 1119, 1133–35 (11th Cir. 2010).

**Procedural Unconscionability.** The Agreement is a contract of adhesion drafted entirely by TopStep, presented on a take-it-or-leave-it basis to traders who have already invested months of effort and thousands of dollars in subscription fees. The Agreement was executed under economic duress: after completing TopStep's evaluation process and earning profits through weeks of successful trading, Plaintiff was presented with the Agreement as a non-negotiable

*McCrudden v. TopstepFunded LLC. Topstep LLC. TopstepTrader. LLC. et al.*

condition of accessing capital he had already earned. No meaningful alternative was offered. No opportunity to negotiate terms was provided.

**Substantive Unconscionability.** The arbitration clause requires an individual trader to bear the initial costs of JAMS arbitration in Wilmington, Delaware—a forum with no nexus to Plaintiff—creating a cost barrier that effectively immunizes TopStep from accountability. JAMS filing fees alone can exceed the amounts in controversy for many traders. Moreover, the clause is one-directional in practical effect: Section 6 carves out TopStep's right to seek injunctive relief in Delaware courts without arbitration, while providing no equivalent carve-out for the trader. *See Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal. 4th 83, 117–18 (2000) (unconscionable arbitration clause that exempted claims the drafting party was most likely to bring).

Additionally, the arbitration clause cannot be enforced to compel arbitration of claims arising from Defendants' operation of an unregistered commodity pool, as such claims implicate federal regulatory violations that the arbitration clause was not designed to address and cannot lawfully insulate. *See Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 90 (2000).

# III. THE PARTIES

## A. Plaintiff

Plaintiff Vincent McCrudden is an individual residing at 31 Flyer Circle, Saint Johns, Florida 32259. Mr. McCrudden is a twenty-five-year veteran of the financial services industry, with extensive experience as both a registered securities broker and futures trader. He is a citizen of the State of Florida.

## B. Defendants

**TopstepFunded LLC** is an Illinois limited liability company with its principal place of business at 141 W. Jackson Blvd., Suite 4240, Chicago, Illinois 60604. TopStepFunded operates the Live Funded Account program through which traders trade actual futures contracts as sub-accounts of TopStepFunded's master trading account. TopStepFunded is the contracting entity on Plaintiff's Live Funded Account Agreement. TopStepFunded is not registered with the CFTC or NFA as a Commodity Pool Operator, despite operating what is, in substance, a commodity pool.

**Topstep LLC** is a Delaware limited liability company with its principal place of business at 141 W. Jackson Blvd., Suite 4240, Chicago, Illinois 60604. Topstep LLC is the parent entity of the Topstep enterprise and controls the operations of TopStepFunded and TopstepTrader. Topstep LLC's Terms of Use, which govern trader access to the Topstep platform, are incorporated by reference into the Live Funded Account Agreement (Section 14). Topstep LLC directs the marketing, business strategy, and operational policies that give rise to Plaintiff's claims and is jointly and severally liable for the wrongful conduct of its subsidiaries and affiliates.

**TopstepTrader, LLC ("TST")** is an Illinois limited liability company with its principal place of business at 141 W. Jackson Blvd., Suite 4240, Chicago, Illinois 60604. TST is identified in Recital B of the Live Funded Account Agreement as the affiliate that administers simulated trading, including the Trading Combine® and Express Funded Account programs. Plaintiff paid tens of thousands of dollars in subscription fees to TST over three years for Combine and XFA accounts. TST is the entity through which Defendants collected the subscription fees that constitute a substantial portion of Plaintiff's damages. TST is also the entity listed on the Better Business Bureau and is the registered trade name under which Defendants have historically operated.

**Andrew James Maratea** (NFA ID #0567741) is the Chief Legal Officer of TopstepFunded LLC. Maratea is responsible for the legal structure of TopStep's trading programs, including the drafting and enforcement of the Live Funded Account Agreement and the Live Trading Rules. Maratea is named individually for his direct participation in the design, implementation, and enforcement of the deceptive practices described herein.

**Michael Joseph Patak** (NFA ID #0332803) is the Chief Executive Officer of TopstepFunded LLC and, upon information and belief, the founder and controlling principal of the Topstep enterprise. Patak exercises ultimate authority over TopStep's business operations, marketing, trading programs, and the practices at issue in this action.

**Sarah Suzan Zeleny** (NFA ID #0567744) is the Chief Operating Officer of TopstepFunded LLC. Zeleny is responsible for the day-to-day operations of TopStep's trading programs, including the implementation of account restrictions, reserve structures, and rule changes that directly caused Plaintiff's damages.

**Summer Kerisha Capps** (NFA ID #0572364) is the Chief Financial Officer of TopstepFunded LLC. Capps oversees TopStep's financial operations, including the collection and retention of subscription fees, the withholding of trader payouts, the administration of the reserve fund structure, and the monetization of trader data.

**Tammy Sue Botsford** (NFA ID #0570664) is the Chief Compliance Officer of TopstepFunded LLC. Botsford is responsible for ensuring TopStep's compliance with applicable law, including the Commodity Exchange Act and NFA rules. Botsford's failure to ensure TopStep's registration as a Commodity Pool Operator, her failure to prevent the sale of trader data to adverse third parties, and her failure to enforce adequate disclosure and transparency standards constitute a direct breach of her compliance obligations.

## C. Individual Liability

Each Individual Defendant is named in his or her individual capacity as an officer and principal of TopstepFunded LLC who personally directed, authorized, participated in, or knowingly permitted the wrongful conduct described herein. Under Florida law, corporate officers who personally participate in tortious or fraudulent conduct are individually liable, regardless of whether they acted on behalf of the corporation. *White v. Mund,* 670 So. 2d 1038, 1039 (Fla. 4th DCA 1996). Under the CEA, "controlling persons" of entities that violate the Act are jointly and severally liable for such violations. 7 U.S.C. § 13c(b). Each Individual Defendant is a controlling person of TopStep within the meaning of the statute.

## IV. THE AGREEMENT AND ITS KEY PROVISIONS

On March 16, 2026, Plaintiff executed TopStep's Live Funded Account Agreement, last modified February 7, 2026. The Agreement is a contract of adhesion drafted entirely by TopStep and presented to traders on a take-it-or-leave-it basis after they have already invested substantial time and money in the Combine and XFA programs. Its provisions reveal a contractual framework that systematically eliminates all meaningful obligations on TopStep's part while imposing comprehensive restrictions on the Trader.

### A. Unilateral Discretion Provisions

The Agreement is saturated with provisions granting TopStep unilateral, unreviewable discretion over virtually every material aspect of the trading relationship:

> *Section 1(a): "Topstep may freeze or limit Live Trading at any time in its sole discretion."*

> *Section 1(b): "[T]he trading privileges of Trader may be terminated by Topstep at any time, including during Live Trading, for any reason or no reason in Topstep's sole and absolute discretion."*

> *Section 2(c): "No Payout to Trader shall be made except with the approval of Topstep in its sole discretion."*

> *Section 1(c): The Live Trading Rules may be "amended from time to time by Topstep in its sole discretion," and "Trader acknowledges and agrees that Trader is solely responsible for staying current on Live Trading Rules ... each of which remain subject to change at any time and from time to time, with or without notice."*

### B. Unilateral Amendment and Deemed Consent

> *Section 23: "This Agreement may be amended by Topstep by written notice to Trader and the subsequent entry by Trader of any order shall constitute agreement to such amendment."*

This provision allows TopStep to materially alter the Agreement at will, deeming the trader's continued trading activity—the very activity for which the trader has already paid—as consent to any changes, no matter how detrimental.

### C. Data Selling and Conflict of Interest

> *Section 10: "Topstep may share or sell such information to Topstep's business partners, affiliates, vendors, distributors, third parties, or other collaborators ... and each of them may use all such information to influence their own trading habits or use them in any other manner."*

*McCrudden v. TopstepFunded LLC, Topstep LLC, TopstepTrader, LLC, et al*

This provision explicitly authorizes TopStep to sell its traders' trading data—including positions, patterns, and preferences—to third parties who may then use that information to trade against TopStep's own traders, "without the necessity of notice, consent, consultation, or approval by Trader."

## D.  Ownership Disclaimers and Forfeiture

*Section 1(b): "Trader shall have no ownership interest in the Live Funded Account and, except as expressly stated herein, no control over or right to withdraw any funds from the Live Funded Account."*

*Section 12(b): "Trader has no right, title, or ownership in any property, funds, or positions in the Live Funded Account."*

*Section 3(b)(ii): If the Trader has not accumulated at least 30 benchmark Trading Days at the time of termination, "all amounts in Trader's Live Funded Accounts shall be forfeit without consideration."*

## E.  Non-Disparagement Gag Clause

*Section 5: "Trader will not make any false, disparaging, defamatory, or derogatory statements, whether written or verbal, including on any websites or social media platforms, regarding any combination of the Topstep Parties, or otherwise place any Topstep Party in a false or negative light."*

This provision operates as a gag clause designed to prevent traders from publicly reporting TopStep's practices, sharing experiences with other traders, cooperating with regulatory investigations, or seeking collective redress.

## F.  The Master Account / Sub-Account Structure

*Section 1(b): Topstep shall provide the Live Funded Account "as a sub-account of Topstep's master trading account."*

This provision is central to the unregistered commodity pool claim. Multiple traders' accounts are sub-accounts of a single master account through which futures are traded on regulated exchanges. This structure is, by definition, a commodity pool.

## V. STATEMENT OF FACTS

### A. TopStep's Business Model

TopStep operates a multi-tiered trading program marketed as providing traders the opportunity to earn funded trading accounts and receive payouts from trading profits. The model operates as follows:

1. Traders pay a monthly subscription fee to participate in a "Combine"—an evaluation account requiring a minimum of two profitable trading days to pass.

2. Upon passing the Combine, traders pay an additional subscription fee for an "Express Funded Account" ("XFA"), a simulated funded account where traders can request payouts, subject to TopStep retaining a 20% share of all payouts.

3. After receiving payouts in the XFA, traders are "called up to live"—marketed as "the big leagues"—where they trade actual futures through TopStep's master account. The rules and conditions change materially and detrimentally upon this transition.

In addition to subscription fees and profit-sharing, TopStep charges traders commissions on all trades, passes through exchange and NFA fees, and—as disclosed in Section 10 of the Agreement—sells traders' trading data to third parties for commercial purposes, generating multiple revenue streams from each participant.

### B. Plaintiff's Three-Year Relationship with TopStep

Plaintiff has maintained a paying relationship with TopStep for over three years, during which time he has paid tens of thousands of dollars in subscription fees for Combines and XFA accounts, commissions on trades, exchange fees, NFA fees, and data fees. Throughout this period, Plaintiff consistently demonstrated profitable trading in the Combine and XFA environments, only to have his earnings systematically eroded or withheld when TopStep changed the governing rules upon transition to live trading.

### C. The December 2025 Live Account

In or around December 2025, after passing the Combine and trading profitably in the XFA account through five payouts, Plaintiff was "called up to live." His live account was funded with approximately $102,000. Upon entering the live account, TopStep imposed materially different and substantially more restrictive trading parameters: the daily loss limit was reduced from $4,500 to $2,000—a reduction of more than 55%—and the maximum number of contracts was reduced from 15 to 3—a reduction of 80%.

These restrictions made sustained profitability effectively impossible in the volatile futures markets Plaintiff traded, including Gold (GC), Silver (SI), Nasdaq (NQ), and S&P 500 E-mini (ES) futures. With a daily loss limit of only $2,000 and a maximum of 3 contracts, Plaintiff was liquidated repeatedly—day after day—causing the account to fall below $40,000 in a short

*McCrudden v. TopstepFunded LLC, Topstep LLC, TopstepTrader, LLC, et al.*

period. The stark contrast between Plaintiff's consistent profitability under the XFA rules and his systematic liquidation under the live account restrictions is direct evidence that TopStep's rule changes are designed to prevent payouts, not to manage risk.

## D. The $150,000 Combine and the "Reserve" Scheme

Most recently, Plaintiff passed a $150,000 Combine, paid the subscription fee for an XFA account, and again traded profitably. Plaintiff completed the Express Funded Account without recording a single losing day. Plaintiff successfully took two payouts of $5,000 each, from which TopStep withheld its 20% profit-sharing cut ($2,000). After only two payouts—well before the five-payout threshold TopStep had previously established for live call-up—TopStep prematurely advanced Plaintiff to a live account, denying him the opportunity to take three additional payouts under the more favorable XFA conditions.

In this iteration, TopStep introduced yet another rule change—a "reserve" structure that had no basis in any prior version of the rules and was not disclosed in the Agreement itself. Rather than credit Plaintiff's live account with the full balance of approximately $38,000, TopStep credited only $10,000 and placed the remaining $28,000 in "reserve." TopStep imposed the following conditions for unlocking the reserve:

1. Plaintiff would need to generate $9,000 in profits on the $10,000 account—a near-100% return—to unlock just 25% of the reserve.

2. To unlock the entire $28,000, Plaintiff would need to generate approximately $36,000 in trading profits—an estimated 400% return.

3. These returns would need to be achieved while constrained to a maximum of 5 contracts and a daily loss limit of $2,000.

Following each liquidation event, TopStep systematically and further reduced Plaintiff's daily loss limit and contract allowances. As of the date of Plaintiff's March 23, 2026 demand letter, Plaintiff's available trading balance had been reduced to approximately $3,700, against which he would need to achieve a return exceeding 300% merely to access additional reserve funds. These conditions render the recovery of Plaintiff's earned funds a mathematical near-impossibility.

## E. The Escalating Restriction Pattern

The pattern of escalating post-loss restrictions is not a legitimate exercise of risk management discretion. It is a deliberate mechanism designed to ensure trading failure, trigger automatic reserve forfeiture, and transfer earned trader capital to TopStep. After each daily loss event—events that are an ordinary and expected feature of leveraged futures trading, particularly during periods of extreme market volatility—TopStep ratcheted down the trading parameters further, creating a death spiral in which each loss made recovery more difficult, guaranteeing eventual account termination and reserve forfeiture.

## F. Technical Failures and Lack of Transparency

TopStep's trading platform has experienced repeated technical issues that invariably operate to the detriment of traders and to TopStep's benefit. Traders have been unfairly liquidated during these incidents, and TopStep has refused to provide adequate remediation or recourse.

Furthermore, unlike registered broker-dealers that provide daily, monthly, and annual account statements, TopStep deliberately withholds comprehensive performance data. TopStep displays only daily profit-and-loss figures without providing historical performance data, winning day counts, or cumulative statements. This deliberate lack of transparency makes it extremely difficult for traders to verify their account status, audit TopStep's representations, or document claims for payout disputes—unless traders independently download data on a daily or intraday basis.

## G. Demand Letter and Regulatory Complaints

On March 23, 2026, Plaintiff sent a formal demand letter to Defendant Maratea at TopStep's Chicago office, demanding: (1) immediate release of the $28,000 reserve balance; (2) cessation of all further account restrictions; (3) a full accounting of all subscription fees paid; and (4) a full accounting of all trading data shared with or sold to third parties. The letter established a five-business-day deadline for response.

On or about the same date, Plaintiff informed Defendants he would file formal complaints with both the National Futures Association and the Commodity Futures Trading Commission documenting TopStep's CEA rule violations, premature live transitions, structured reserve forfeiture, escalating post-loss restrictions, unilateral rule changes, trading data monetization, execution under duress, and deceptive marketing practices.

## H. Widespread Pattern of Abuse

Plaintiff's experience is not isolated. Tens of thousands of complaints from traders are documented across social media platforms including Reddit, Discord, and Facebook, describing substantially similar patterns: arbitrary rule changes, withheld payouts, technical failures causing liquidations, and inadequate dispute resolution. This widespread pattern is consistent with a business model that functions as a subscription-based scheme designed to continuously extract fees while systematically denying payouts.

# VI. ARGUMENT

## A. Count I: Operation of an Unregistered Commodity Pool (7 U.S.C. §§ 6m, 6o)

The Commodity Exchange Act requires any person operating a commodity pool to register as a Commodity Pool Operator with the CFTC and become a member of the NFA. 7 U.S.C. § 6m(1). A "commodity pool" is "any investment trust, syndicate or similar form of enterprise operated for the purpose of trading commodity interests." CFTC Rule 4.10(d)(1). A "commodity pool operator" is any person who "solicits, accepts, or receives from others, funds, securities, or property ... for the purpose of trading in commodity interests." 7 U.S.C. § 1a(11).

TopStep's own Agreement and business structure establish that it operates a commodity pool:

1. Section 1(b) of the Agreement establishes that the Live Funded Account is a "sub-account of Topstep's master trading account." Multiple traders' accounts are sub-accounts of this single master account.

2. TopStep solicits and receives funds from traders in the form of subscription fees, commissions, exchange fees, NFA fees, data fees, and a 20% share of trading profits.

3. These funds flow into a pooled structure through which futures contracts are traded on regulated exchanges (CME, CBOT, COMEX, NYMEX).

4. Traders' compensation is calculated as a "proportionate allocation of the Trading Profits" (Section 2(b))—the hallmark of a pooled investment structure.

TopStep is not registered with the CFTC or NFA as a Commodity Pool Operator. A search of the NFA's Background Affiliation Status Information Center ("BASIC") database confirms that TopstepFunded LLC has no CPO registration. TopStep will argue that it is engaged in "proprietary trading"—trading "for its own account and risk" (Recital A of the Agreement). But this characterization is a legal fiction. TopStep does not fund its trading from its own capital alone; it solicits funds from thousands of traders through subscription fees and profit-sharing, combines those funds in a master account, and allocates profits and losses to individual trader sub-accounts. This is precisely the activity the CPO registration requirement was designed to regulate.

The failure to register as a CPO is not a mere technical violation. CPO registration imposes critical protections for pool participants, including mandatory disclosure documents, periodic reporting to the NFA, segregation of pool participant funds, restrictions on commingling, and fiduciary obligations to pool participants. *See CFTC v. Equity Fin. Grp., LLC,* No. 04-cv-1512 (C.D. Cal. 2005). TopStep's failure to register enables it to operate without these protections—withholding account statements, modifying rules unilaterally, and selling trader data to adverse parties—precisely the abuses that CPO registration is designed to prevent.

Each Individual Defendant is a controlling person of TopStep within the meaning of 7 U.S.C. § 13c(b) and is jointly and severally liable for TopStep's operation of an unregistered commodity pool. Defendant Botsford, as Chief Compliance Officer, bears particular responsibility for the failure to register, as ensuring regulatory compliance is the core function of her position.

## B. Count II: Fraud and Manipulation Under the CEA (7 U.S.C. § 9(1); 17 C.F.R. § 180.1)

The CEA's anti-fraud provisions prohibit any person from employing any manipulative or deceptive device or contrivance in connection with any swap, contract of sale of any commodity in interstate commerce, or contract for future delivery. 7 U.S.C. § 9(1); 17 C.F.R. § 180.1.

TopStep's conduct constitutes fraud and manipulation in multiple respects. First, TopStep markets funded trading accounts while systematically altering rules to prevent payouts—a classic scheme to defraud. Second, Section 10 of the Agreement authorizes TopStep to sell traders' trading data—including positions, entry and exit points, and stop-loss levels—to third-party institutions who use that data to trade against TopStep's own traders. This creates a structural incentive for TopStep and its data purchasers to engineer trader liquidations. Third, TopStep's deliberate withholding of comprehensive account statements prevents traders from detecting and documenting the fraud.

Each Individual Defendant, as a controlling person, is jointly and severally liable for TopStep's violations of the CEA's anti-fraud provisions. 7 U.S.C. § 13c(b).

## C. Count III: Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing

A breach of contract claim requires: (1) a valid contract; (2) a material breach; and (3) resulting damages. *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008).

1. **The Agreement Is Illusory.** A contract is illusory when one party retains unlimited discretion over whether to perform. The Agreement's cumulative effect is that TopStep has no binding obligation: it may freeze or terminate trading for "any reason or no reason" (Section 1(b)); it retains "sole discretion" over payouts (Section 2(c)); it may amend the Trading Rules without notice (Section 1(c)); and it may amend the entire Agreement with trading deemed consent (Section 23). When every material obligation is subject to one party's unfettered discretion, the contract lacks mutuality of obligation.

2. **Alternatively, TopStep Breached the Agreement.** Even if enforceable, TopStep breached the Agreement by: (a) imposing restrictions so severe as to make the live account a fundamentally different bargain (reducing daily loss limits by 55% and contracts by 80%); (b) introducing the reserve mechanism with no basis in the Agreement or any prior version of the

rules; (c) prematurely advancing Plaintiff to live after only two payouts, depriving him of three additional XFA payouts; and (d) systematically escalating restrictions after each loss event to ensure account failure.

**3. Breach of the Implied Covenant.** The implied covenant of good faith and fair dealing inheres in every contract. *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.,* 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001). Even where a contract grants discretion, that discretion must be exercised in good faith and may not be used to destroy the other party's right to receive contractual benefits. TopStep's systematic pattern of changing rules to prevent payouts—after collecting fees based on the promise of those payouts—is the paradigmatic violation.

## D.  Count IV: Fraudulent Inducement

Fraudulent inducement requires: (1) a false statement of material fact; (2) knowledge of falsity; (3) intent to induce reliance; and (4) resulting injury. *Johnson v. Davis,* 480 So. 2d 625, 627 (Fla. 1985).

TopStep's marketing represents that by paying subscription fees, passing the Combine, and trading profitably, traders will receive payouts and advance to funded live accounts. These representations are materially misleading because TopStep knows—and the Agreement itself confirms—that it retains absolute discretion to deny any payout (Section 2(c)), change any rule without notice (Section 1(c)), and terminate any account for no reason (Section 1(b)). The marketed promise of funded trading with payouts is illusory by TopStep's own contractual design. Each Individual Defendant personally participated in the creation, approval, and dissemination of these misleading marketing representations.

## E.  Count V: Violation of the Florida Deceptive and Unfair Trade Practices Act

FDUTPA, Fla. Stat. § 501.204, prohibits unfair or deceptive acts in the conduct of any trade or commerce. TopStep's pattern of marketing favorable conditions, collecting fees, and systematically changing rules to prevent payouts is the quintessential deceptive trade practice. The concealment of material forfeiture terms (the reserve structure, escalating restrictions) in externally modifiable "Live Trading Rules"—presented to traders only after they have already earned capital—compounds the deception. Under FDUTPA, Plaintiff is entitled to actual damages, attorney's fees, and injunctive relief. Fla. Stat. § 501.211. The choice-of-law clause designating Delaware law should not be enforced to deprive Plaintiff of FDUTPA protections, as Florida has a strong public policy interest in protecting its residents from deceptive practices directed at them. *See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.,* 761 So. 2d 306, 311 (Fla. 2000).

## F.  Count VI: Conversion

Conversion is an act of dominion wrongfully asserted over another's property inconsistent with ownership. *Seymour v. Adams,* 638 So. 2d 1044, 1047 (Fla. 5th DCA 1994).

Section 2(b) of the Agreement provides that Trader shall receive "a proportionate allocation of the Trading Profits." Once profits are earned and allocated, they become Plaintiff's property. TopStep's placement of $28,000 in allocated profits into a "reserve" accessible only upon generating returns of 100% to 400% constitutes wrongful dominion. The ownership disclaimers in Sections 1(b) and 12 cannot insulate Defendants from conversion claims to the extent those disclaimers are themselves unconscionable or the product of fraud.

## G. Count VII: Unjust Enrichment

Unjust enrichment requires: (1) a benefit conferred; (2) knowledge of the benefit; (3) acceptance or retention; and (4) inequitable circumstances. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012). Plaintiff conferred substantial benefits on Defendants over three years: tens of thousands of dollars in subscription fees, commissions, exchange and NFA fee pass-throughs, a 20% share of payouts, and—per Section 10—valuable trading data that Defendants monetize by selling to third parties. Defendants accepted and retained all benefits while systematically denying the payouts that were the consideration for Plaintiff's participation. This claim is pleaded in the alternative.

## H. Count VIII: Breach of Fiduciary Duty and Conflict of Interest

To the extent TopStep acts as an intermediary in facilitating Plaintiff's trading activity— and particularly if TopStep is determined to be operating as a CPO—it owes Plaintiff fiduciary duties of loyalty and fair dealing. Section 10 of the Agreement reveals a structural conflict: TopStep profits from (a) subscription fees from traders who are repeatedly liquidated and must resubscribe; (b) a 20% share of payouts; (c) commissions and fees on every trade; and (d) the sale of trader data to third parties who trade against TopStep's traders. Revenue streams (a), (c), and (d) create a perverse incentive to facilitate trader failure. This structural conflict is fundamentally incompatible with fiduciary obligations.

As NFA-registered individuals, the Individual Defendants each owe independent duties of fair dealing under NFA Compliance Rule 2-4 (just and equitable principles of trade) and NFA Compliance Rule 2-36 (supervision and fair dealing). Their knowing participation in the data-selling scheme, the escalating restriction pattern, and the reserve forfeiture structure constitute breaches of these duties.

## I. Count IX: Unconscionability

Florida courts recognize both procedural and substantive unconscionability. *Steinhardt v. Rudiger*, 422 So. 2d 884 (Fla. 3d DCA 1982).

**Procedural Unconscionability.** The Agreement is a classic contract of adhesion drafted entirely by TopStep and presented on a take-it-or-leave-it basis to traders who have already invested substantial time and money. The Agreement was executed under economic duress:

*McCrudden v. TopstepFunded LLC, Topstep LLC, TopstepTrader, LLC, et al.*

Plaintiff was required to sign as a non-negotiable condition of accessing capital he had already earned, with no meaningful alternative and no opportunity to negotiate.

**Substantive Unconscionability.** Multiple provisions are independently unconscionable: (1) the reserve structure requiring 100–400% returns to access earned funds; (2) unlimited unilateral discretion over every material term (Sections 1(a), 1(b), 1(c), 2(c), 23); (3) the data-selling provision (Section 10) with no compensation, notice, or opt-out; (4) the non-disparagement gag clause (Section 5); (5) the forfeiture provisions deeming all funds forfeit without 30 benchmark trading days or upon 90 days of inactivity (Section 3(b)); and (6) the one-sided arbitration clause requiring JAMS arbitration in Delaware while carving out TopStep's right to seek injunctive relief in court (Sections 6, 19).

# VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that this Court has jurisdiction over this action under both diversity and federal question jurisdiction; that the Agreement's forum-selection, arbitration, and jury waiver clauses are unconscionable and unenforceable; and that the facts and law establish meritorious claims against all Defendants for operation of an unregistered commodity pool, fraud and manipulation under the CEA, breach of contract, fraudulent inducement, violations of the Florida Deceptive and Unfair Trade Practices Act, conversion, unjust enrichment, breach of fiduciary duty, and unconscionability.

Plaintiff requests the following relief:

4. A declaration that TopstepFunded LLC operates an unregistered commodity pool in violation of 7 U.S.C. § 6m and that each Individual Defendant is a controlling person jointly and severally liable under 7 U.S.C. § 13c(b);

5. A declaration that the arbitration clause (Section 19), forum-selection clause (Section 18), and jury waiver (Section 20) of the Agreement are unconscionable and unenforceable;

6. Compensatory damages including all subscription fees paid over three years, withheld payouts, the $28,000 held in reserve, lost trading profits, commissions and fees charged, and consequential damages;

7. Punitive damages for Defendants' willful, wanton, and fraudulent conduct;

8. Statutory damages, attorney's fees, and costs under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.211;

9. Injunctive relief ordering Defendants to: (a) immediately release Plaintiff's $28,000 in reserve funds; (b) register as a Commodity Pool Operator or cease operations; (c) cease the practice of selling trader data to institutions that trade against its own traders; (d) provide full and transparent account statements to all traders; and (e) rescind the non-disparagement clause as applied to truthful statements;

10. Disgorgement of all ill-gotten gains derived from Defendants' operation of the unregistered commodity pool;

11. Pre-judgment and post-judgment interest as allowed by law; and

12. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

*McCrudden v. TopstepFunded LLC, Topstep LLC, TopstepTrader, LLC, et al.*

/s/ Vincent McCrudden

**VINCENT McCRUDDEN**
*Plaintiff, Pro Se*
31 Flyer Circle
Saint Johns, FL 32259
(646) 220-9900
vmcrudden@gmail.com

*McCrudden v. TopstepFunded LLC, Topstep LLC, TopstepTrader, LLC, et al.*