**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

VINCENT McCRUDDEN,
Plaintiff,

v. Case No. 3:26-cv-00816-WWB-LLL

TOPSTEPFUNDED LLC, an Illinois limited liability company; TOPSTEP LLC, a Delaware limited liability company; TOPSTEPTRADER, LLC, an Illinois limited liability company; MICHAEL JOSEPH PATAK, individually; ANDREW JAMES MARATEA, individually; and SARAH SUZAN ZELENY, individually,
Defendants.

_______________________________________/

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' RENEWED MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS OR, IN THE ALTERNATIVE, TO DISMISS (DOC. 26)

## INTRODUCTION

Defendants' renewed motion (Doc. 26) restates their first motion (Doc. 19) and adds alternative requests for dismissal. On arbitration, it does not engage the threshold showings already of record in Plaintiff's opposition to the first motion (Doc. 25): that formation of the browsewrap layer is contested and is for the Court; that multiple integrated agreements each claiming to supersede the others present a "which contract governs" question for the Court; and that Plaintiff specifically challenges the delegation language, placing its enforceability before the Court under *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010). Because Local Rule 3.01(h) bars incorporation by reference, those grounds are restated below.

The renewed motion does add one thing of consequence: an admission. Arguing the commodity-pool count, Defendants state that "the LFA involved real trading **(which it did)**." Doc. 26 at 16. Defendants have now conceded in a filed brief that live funded

account trading was real commodity-interest trading. That concession undermines the premise of their arguments under 17 C.F.R. § 166.5, narrows the fraud dispute to Topstep's actual practices, and confirms that the questions this case presents are factual and merits-bound — not grounds for dismissal on the pleadings.

## ARGUMENT

### I. The Court — Not an Arbitrator — Must Decide the Threshold Questions, and the Delegation and Arbitration Provisions Are Unenforceable.

#### A. Formation of the browsewrap layer is contested and is for the Court.

A party moving to compel arbitration bears the burden of establishing that an agreement to arbitrate exists, under a standard akin to summary judgment. *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329–33 (11th Cir. 2016). Whether the parties formed an agreement at all is for the Court, even where the agreement purports to delegate arbitrability. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296–99 (2010); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). Defendants concede the Combine Rebill Agreement reaches arbitration only by incorporating the Terms of Use "through a browsewrap agreement." Doc. 26 at 7 n.6. Browsewrap binds only where the interface gives reasonably conspicuous notice and the user has actual or constructive knowledge of the terms, and courts are "more reluctant" to enforce browsewrap against consumers. *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175–77 (9th Cir. 2014); *Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 762 (Fla. 4th DCA 2017). Plaintiff contests that the interface gave such notice and that he manifested assent to the browsewrap layer. A delegation clause cannot lift itself into force; the arbitrator's authority presupposes a validly formed agreement containing the

delegation. Formation must therefore be resolved by the Court, against Defendants' *Bazemore* burden.

**B. Which of the competing integrated agreements governs is for the Court.**

Defendants rely on at least three agreements — the Combine Rebill Agreement with incorporated Terms of Use, the XFAA, and the LFAA — each declaring itself the entire agreement superseding all prior agreements. Defendants' own footnote concedes that "the most recently executed agreement or acceptance of the terms governs." Doc. 26 at 3 n.3. Which agreement that is, and which claims each governs, is an antecedent question for a court, not an arbitrator. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148–52 (2024). And where a party is confronted with multiple, conflicting arbitration documents, a court may find the parties never reached mutual assent to arbitrate at all. *Basulto v. Hialeah Auto., LLC*, 141 So. 3d 1145, 1156–61 (Fla. 2014).

**C. Plaintiff specifically challenges the delegation provision, which is unconscionable and unenforceable.**

Defendants' gatekeeping argument is that Plaintiff "does not specifically challenge the delegation provision itself." Doc. 26 at 8. He does, and did. See Doc. 25 at 5–9. Plaintiff challenges the delegation language of LFAA § 19(a) — "including the determination of the scope or applicability of this Agreement to arbitrate" — as unconscionable and unenforceable independent of the remainder of the clause. A challenge "directed specifically to the delegation provision" is decided by the Court. *Rent-A-Center*, 561 U.S. at 71–74.

The delegation language is not a standalone clause. It sits in the same provision that (i) requires the parties to "initially evenly share the cost of arbitration" while entitling

the "prevailing Party" to recover "all costs incurred by it, including such Party's reasonable attorneys' fees," and (ii) reserves to Topstep alone the right to "seek a temporary or permanent restraining order or other injunctive relief in the Chosen Courts." LFAA § 19(a) (Doc. 26-2). To contest even the gateway question of who decides arbitrability before JAMS, a pro se individual must risk paying the fees of Defendants' AmLaw-ranked international counsel if the arbitrator disagrees. A term that makes access to the forum — including access to the arbitrability question itself — prohibitively expensive is unenforceable. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90–92 (2000); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235–36 (2013).

Defendants assert Plaintiff "alleges no such facts" of prohibitive cost. Doc. 26 at 11. The record already contains them, unanswered: JAMS requires a $3,500 filing fee for multi-party matters, a case-management fee of 13% of all arbitrator fees, and arbitrator compensation of approximately $700 to $1,200 per hour; the agreements' "Research Analyst" and independent-contractor designations place Plaintiff outside JAMS's reduced consumer and employee rates; § 19(a) obligates Plaintiff to advance half of those costs; the nearest JAMS office to the contractually required Wilmington, Delaware venue is hundreds of miles from Plaintiff's home; and the amount in dispute is approximately $140,000, against which the fee-shift exposure to Sidley Austin LLP's fees is ruinous and unpredictable. Declaration of Vincent McCrudden, Doc. 25 at 19–24, ¶¶ 3–7 & Ex. 1 (JAMS Comprehensive Rules and fee schedule). Defendants' renewed motion does not address that evidence.

The delegation sentence is also non-mutual: Topstep keeps the courthouse open for its own most likely claims while compelling Plaintiff to arbitrate even the question of who decides arbitrability. *WasteCare Corp. v. Harmony Enters., Inc.*, 822 F. App'x 892 (11th Cir. 2020), does not answer this: there the carve-out concerned the scope of substantive relief, while here the non-mutual carve-out and the fee-shift are textually fused to the delegation language and define the terms on which the gateway question itself must be litigated.

**D. The arbitration provision as a whole is unconscionable and violates the customer-protection regime Topstep holds itself out as following.**

Should the Court reach the broader clause, both procedural and substantive unconscionability are present on Florida's sliding scale. *Basulto*, 141 So. 3d at 1158–61. Procedurally, these are contracts of adhesion, offered take-it-or-leave-it, with the Combine layer binding only through browsewrap; Plaintiff's futures-trading experience says nothing about negotiating adhesive delegation terms. Substantively, four features combine: a Delaware arbitral forum unconnected to the parties or dispute; cost-splitting coupled with a loser-pays fee-shift; a unilateral court carve-out for Topstep; and a class-and-consolidation waiver. *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574–77 (Fla. 1st DCA 1999); *Romano v. Manor Care, Inc.*, 861 So. 2d 59, 61–64 (Fla. 4th DCA 2003). Defendants' authorities enforced mutual, evenhanded clauses; none approved a forum-plus-fee-shift-plus-carve-out package reserving court access to the drafter alone.

Independently, the clause disregards the regulatory regime Topstep invokes when convenient. The CFTC's customer-protection rule, 17 C.F.R. § 166.5, and NFA Compliance Rule 2-53 require that a predispute arbitration agreement be voluntary

rather than a condition of doing business, carry the boldface "Three Forums" disclosure, preserve the customer's right to elect CFTC reparations under 7 U.S.C. § 18, and afford a forum election. Section 19 satisfies none of these requirements. Defendants respond that Plaintiff "was not such a customer" because Combine and XFA trading was simulated and LFA trading used Topstep's capital. Doc. 26 at 10. But Defendants now admit LFA trading was real, Doc. 26 at 16; Topstep's own Risk Disclosure Statement holds out its affiliate Topstep Brokerage LLC as a CFTC-registered introducing broker and NFA member (NFA ID 0567079); Defendant Patak is a longtime NFA registrant; and after this action was filed the Topstep entities obtained a concentrated set of NFA registrations and principal approvals. Doc. 25 at 19–24, ¶¶ 8–11 & Exs. 2–5. Having taken the benefit of holding itself out within the CFTC/NFA framework, Topstep cannot disclaim that framework to enforce an arbitration clause the framework forbids. 9 U.S.C. § 2.

**E. The nonsignatory Individual Defendants cannot compel arbitration.**

Patak, Maratea, and Zeleny did not sign the agreements and invoke equitable estoppel. Estoppel permits a nonsignatory to compel arbitration only where the signatory's claims rely on, and are intertwined with, the terms of the agreement containing the clause. *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999). First, estoppel cannot manufacture an agreement never validly formed; if no enforceable agreement exists (Parts I.A–I.D), there is nothing for nonsignatories to enforce. Second, Plaintiff's claims against the individuals arise from duties imposed by federal law — including controlling-person liability under 7 U.S.C. § 13c(b) — and from their own public conduct, not from the contract terms. Patak's public solicitations in his

own name, promoting "Live REAL money" accounts and "REAL Prop firm capital," e.g., Supplemental Declaration of Vincent McCrudden ("Suppl. Decl.") ¶¶ 3–5 & Ex. 1, are not applications of the LFAA's terms. Claims grounded in independent statutory duties and a defendant's own extra-contractual statements are not "intertwined" with the contract for estoppel purposes. *MS Dealer*, 177 F.3d at 947–48.

**F. If arbitration is compelled, the FAA requires a stay, not dismissal.**

Should the Court compel arbitration — it should not — Section 3 of the FAA requires a stay rather than dismissal. *Smith v. Spizzirri*, 601 U.S. 472, 475–78 (2024).

**II. The Court Has Personal Jurisdiction Over the Individual Defendants.**

Defendants' Rule 12(b)(2) argument is expressly derivative: it "fails with the CEA claims." Doc. 26 at 12. The CEA authorizes nationwide service of process, 7 U.S.C. § 25(c), and where a federal statute provides nationwide service, due process is measured by the defendant's contacts with the United States as a whole. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 946–47 (11th Cir. 1997). Because the CEA claims survive (Part III.A), jurisdiction over the Individual Defendants follows, and supplemental jurisdiction reaches the related state-law claims arising from the same nucleus of facts.

Jurisdiction is also proper independently. Florida's long-arm statute reaches tortious acts committed through communications directed into Florida. Fla. Stat. § 48.193(1)(a)(2); *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002); *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1214–16 (Fla. 2010). The corporate shield doctrine does not protect a corporate officer who personally commits or participates in a tort — *Doe v. Thompson* itself excepts fraud and intentional misconduct, 620 So. 2d

1004, 1006 n.1 (Fla. 1993), and employees who personally commit torts are subject to jurisdiction notwithstanding their corporate capacity. *Kitroser v. Hurt*, 85 So. 3d 1084, 1087–90 (Fla. 2012). Due process is satisfied where an intentional tort is aimed at a Florida resident who suffers injury here. *Licciardello v. Lovelady*, 544 F.3d 1280, 1285–88 (11th Cir. 2008). The FAC alleges that Patak personally made and broadcast the solicitations at issue, that those solicitations reached and were acted upon by Plaintiff in Florida, that Plaintiff made payments from Florida, and that Maratea and Zeleny personally directed the acts alleged. FAC ¶¶ 12–13, 19–21, 30, 52–55. Should the Court find the present record insufficient, Plaintiff respectfully requests jurisdictional discovery in the alternative.

**III. The First Amended Complaint States Plausible Claims.**

On a Rule 12(b)(6) motion the Court accepts the FAC's well-pleaded facts and draws reasonable inferences for Plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Defendants' arguments repeatedly ask the Court to do the opposite: to resolve disputed characterizations of Topstep's business model against the pleader, on Defendants' own declaration, at the pleading stage.

**A. Counts I and II state claims under the Commodity Exchange Act.**

Commodity pool. A "commodity pool" is any "investment trust, syndicate, or similar form of enterprise operated for the purpose of trading in commodity interests." 7 U.S.C. § 1a(10)(A). The FAC alleges that Topstep solicits and receives funds from traders and aggregates each trader's live account as a sub-account of a single master trading account funded in part by aggregated trader fees. FAC ¶ 57. Defendants respond that fees are not pooled capital and that no pro rata sharing exists. Doc. 26 at

14–15. Their own exhibit answers them: the LFAA provides that the trader "shall receive, as Trader's sole compensation, a **proportionate allocation of the Trading Profits**." LFAA § 2(b) (Doc. 26-2). A proportionate allocation of trading profits generated through a master account funded in part by participants' aggregated payments is precisely the profit-sharing arrangement Defendants say is missing. The factors drawn from *Lopez v. Dean Witter Reynolds, Inc.*, 805 F.2d 880 (9th Cir. 1986), are judicial guides, not statutory elements, and whether participant fees functioned as pooled trading capital is a question of fact. And Defendants' admission that LFA trading was real, Doc. 26 at 16, concedes the enterprise traded commodity interests.

Section 25 standing. Defendants rest on *Loginovskaya v. Batratchenko*, 764 F.3d 266 (2d Cir. 2014), an out-of-circuit decision that does not bind this Court. The FAC pleads, in the alternative, transactions within § 25(a)(1)'s enumerated categories, FAC ¶ 56: Plaintiff paid fees and deposits in connection with a program through which futures contracts were made and orders placed for a sub-account maintained in his name; he received trading parameters, eligibility criteria, and trading direction for those fees; and, on the FAC's pool allegations, he purchased participation in a pooled enterprise. Whether those transactions satisfy § 25(a)(1) presents at minimum factual questions unsuited to resolution on the pleadings, particularly where Defendants simultaneously insist the true character of the accounts and trading is established by their own untested declaration.

Rule 9(b). The FAC pleads the who (Patak and the Topstep entities), the what (representations of "real money" funded trading and payout entitlements), the where (Topstep's marketing pages and Patak's public X account), the when (dated

statements), and the how (payouts withheld, accounts restricted, reserves imposed). FAC ¶¶ 30–36, 40–47, 52–54. Defendants' timing argument — that identified statements postdate Plaintiff's participation, Doc. 26 at 17–18 — ignores the structure of their own product: the Combine Rebill Agreement bills monthly, so Plaintiff made recurring payments throughout the period of the representations, and statements made during participation induced continuing payments and continued participation. Patak's January 14, 2026 solicitation — "$101,830.14 Live REAL money prop account ... REAL Prop firm capital. Real prop firm trading" — predates the account restrictions, reserve, and payout denials alleged in the FAC. Suppl. Decl. ¶¶ 3–5 & Ex. 1. Defendants' admission that live trading "did" occur narrows the falsity inquiry to Topstep's actual practices as to Plaintiff's account — discovery-bound merits questions, not pleading defects. The controlling-person and aiding-and-abetting allegations likewise identify each individual's role, authority, and participation. FAC ¶¶ 19–21, 55; 7 U.S.C. § 13c(a)–(b).

**B. Count III states a claim for breach of contract.**

Defendants say Plaintiff identifies no breached obligation. The LFAA states the trader "shall receive" a proportionate allocation of Trading Profits, LFAA § 2(b), and that payouts "will generally be disbursed to Trader within 7–10 business days," LFAA § 2(c). Those are express obligations. Defendants' reliance on reserved discretion proves too much: under Delaware law, a contracting party's exercise of discretion is constrained by the implied covenant of good faith and fair dealing, which requires discretion to be exercised reasonably and consistently with the parties' expectations. *Dieckman v. Regency GP LP*, 155 A.3d 358, 367–68 (Del. 2017); see *Nemec v. Shrader*, 991 A.2d

1120, 1125–26 (Del. 2010). Whether Topstep's mid-stream rule changes, restrictions, reserve, and refusal to disburse allocated profits were good-faith administration or pretext to defeat the contract's central promise is quintessentially factual.

**C. Counts IV and V state fraud and FDUTPA claims.**

The fraudulent-inducement and FDUTPA counts rest on the same particularized statements addressed above, made publicly to solicit and retain paying participants, and on the recurring-payment structure under which each monthly rebill was a new payment made against continuing representations. Reasonable reliance and the effect of program disclosures on a reasonable consumer are jury questions not resolvable on the pleadings, and Defendants' insistence that a sophisticated trader could not be deceived is a merits defense, not a pleading standard. As for damages, FDUTPA measures the difference in market value between what was promised and what was received, *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986–87 (11th Cir. 2016), and the FAC alleges Plaintiff paid fees for a product materially different from the one represented. FAC ¶¶ 60–61. That is a cognizable FDUTPA theory.

**D. Counts VI, VII, and VIII are properly pleaded, including in the alternative.**

Conversion. The FAC identifies a specific, determinate fund: approximately $28,000 in allocated profits that Topstep approved, then diverted into a "reserve" and refused to disburse. FAC ¶ 62. Once allocated and approved, those amounts were identifiable property to which Plaintiff had an immediate right of possession; the LFAA's ownership disclaimers cannot be read at the pleading stage to authorize the permanent retention of sums the agreement itself required to be allocated and disbursed.

Unjust enrichment. Rule 8(d)(2)–(3) permits alternative and inconsistent pleading, and an unjust-enrichment claim may proceed in the alternative where the validity or coverage of the express contract is disputed — as Defendants themselves dispute it, contending the agreements are enforceable while Plaintiff pleads they are unconscionable and, in part, illusory. *Martorella v. Deutsche Bank Nat'l Trust Co.*, 931 F. Supp. 2d 1218, 1227–28 (S.D. Fla. 2013). The claim also reaches a benefit the contracts do not lawfully cover as applied: Topstep's monetization of Plaintiff's trading data, which Topstep's own recitals value as "of sufficient value to pay the Reward." XFAA Recitals A, C (Doc. 26-5); LFAA § 10 (Doc. 26-2).

Fiduciary duty. A commodity pool operator stands in a fiduciary relationship to pool participants. Because Counts I and II adequately plead that Defendants operated a commodity pool and accepted participants' funds and property, the fiduciary count rises with them; it is pleaded in the alternative to the contract counts and cannot be dismissed on the premise — disputed and unresolved — that the parties' relationship was an ordinary arm's-length service contract.

**E. Any dismissal should be with leave to amend.**

Should the Court find any count deficient, Plaintiff respectfully requests leave to amend. Leave is freely given, Fed. R. Civ. P. 15(a)(2), particularly for a pro se plaintiff, and no amendment here would be futile in light of Defendants' own admissions and the documents of record.

## CONCLUSION

This case concerns an enterprise that solicits retail participants with promises of "REAL Prop firm capital" and "LIVE real money trading," collects recurring fees from

them, and — by its founder's own public accounting — has paid "1.4b+ total payouts" across "roughly 10,000 Topstep traders tak[ing] a payout each week." Suppl. Decl. Ex. 1. Defendants' renewed motion asks the Court to place every promise behind that operation beyond testing in any forum: first by sending even the question of who decides arbitrability to a fee-laden arbitral process in a distant venue that the customer-protection rules Topstep holds itself out as honoring squarely forbid; failing that, by dismissing the pleadings on the strength of Defendants' own declarations and characterizations — materials outside the four corners of the First Amended Complaint. This is Defendants' second such motion, and it engages none of the showings in Plaintiff's opposition of record. A pro se plaintiff is rightly held to strict compliance with this Court's rules; Defendants should be held to the pleadings, to their own exhibits, and to their own admissions.

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Renewed Motion to Compel Arbitration and Stay Proceedings or, in the Alternative, to Dismiss (Doc. 26) in its entirety; in the event arbitration is compelled, stay rather than dismiss this action; and in the event any count is dismissed, grant leave to amend.

Dated: July 13, 2026

Respectfully submitted,

/s/ Vincent McCrudden
Vincent McCrudden, Plaintiff, Pro Se
31 Flyer Circle
Saint Johns, Florida 32259
(646) 220-9900
vmccrudden@gmail.com

## CERTIFICATION REGARDING THE USE OF GENERATIVE ARTIFICIAL INTELLIGENCE

Pursuant to the Court's Standing Order dated April 2, 2026 (In re: Use of Generative Artificial Intelligence), the undersigned certifies that, to the extent generative artificial intelligence was used in any drafting of this filing, any language drafted by such artificial intelligence — even if later edited by a human — was personally reviewed by the undersigned for accuracy, and that all legal citations reference actual, non-fictitious cases or cited authority and accurately reflect the contents of such authority.

/s/ Vincent McCrudden
Vincent McCrudden, Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 13, 2026, a true and correct copy of the foregoing, with the accompanying Supplemental Declaration and exhibit, was served upon counsel of record for Defendants by electronic mail:

Nicole K. Chipi, Esq. — nchipi@sidley.com
Stephen L. Cohen, Esq. — scohen@sidley.com
Ian McGinley, Esq. — Ian.McGinley@Sidley.com
SIDLEY AUSTIN LLP — Counsel for Defendants

/s/ Vincent McCrudden
Vincent McCrudden, Plaintiff, Pro Se